IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly E. Schob, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>Nancy L. Reilly, et al.,<br><br>    Defendants. | No. CIV 10-0505-PHX-SRB<br><br>**REPORT AND RECOMMENDATION** |

Judge Bolton's Order of Referral (Doc. 10) directed the undersigned to prepare a Report and Recommendation on Plaintiffs' pending Application for Entry of Default Judgment. (Doc. 7). The Court has reviewed the Application and all respective attachments. Moreover the Court is familiar with the underlying litigation issues because it had the benefit of presiding at the hearing on Plaintiffs' Application for Entry of Default Judgment on June 11, 2010. Accordingly, the Court is ready to set forth its recommendation.

**BACKGROUND**

On March 5, 2010, Plaintiffs Kimberly E. Schob ("Schob") and Timothy R. Parrillo filed this action against Defendant Nancy L. Reilly ("Reilly"), unnamed Jane and John Does, and unidentified Black and White Corporations (Doc. 1). Defendants purportedly committed constitutional violations of Plaintiffs' due process and equal protection rights while acting under the color of state law. *Id.* at pg. 1, lns. 22-30. Plaintiffs consequently brought this suit pursuant to 42 U.S.C. § 1983 to recover damages incurred by Defendants' denial of these constitutional rights. *Id.* at ¶¶ 11-14.

Defendant Reilly has failed to respond to the Complaint or otherwise plead within the requisite time. In addition, even though Plaintiffs requested and obtained entry of default, as well as properly moved for entry of default judgment via application, Reilly has filed no opposition to the request or motion. Accordingly, pending before the Court is Plaintiffs' motion for entry of default judgment pursuant to Federal Rules of Civil Procedure 55(a).

## STATEMENT OF FACTS

Plaintiffs Schob and Timothy Parrillo are siblings, and both reside in Gilbert, Arizona. (Doc. 1, Complaint, ¶¶ 1-2, 16).[1] Based on the service of process documents and Schob's statements at the June 11 hearing, Defendant Nancy L. Reilly (formerly known as Nancy L. Parrillo) apparently resides in Arizona as well. (Doc. 5). On or about May 18, 1970, Plaintiffs' father, Donald W. Parrillo ("Plaintiffs' father"), was involved in a divorce action with Reilly. (Doc. 1, ¶ 5). This action was docketed as Case No. 69-1886-G in the Circuit Court of the Eighteenth Judicial District in Du Page County, Illinois. *Id.* On October 21, 1994, a post-judgment order was entered in this case by an Illinois judge. *Id.* at ¶ 6. This order established a property settlement between Donald Parrillo and his ex-wife Nancy Reilly, awarding $333,608 to Reilly (petitioner at the time). *Id.* at ¶¶ 6-7. This judgment was to be paid in small, monthly installments. *Id.* Reilly then removed and domesticated the judgment to an Indiana state court on March 13, 1997. *Id.* at ¶ 8.

On June 9, 1997, a hearing was held in the Indiana state court. *Id.* at ¶ 9. During this hearing, the judge increased the domesticated judgment amount, and disregarded the thousands that had already been paid. *Id.* The judge also made the entire judgment immediately due and payable to Defendant Reilly. *Id.*

---

[1]The Court notes that the Complaint's numbered paragraphs were misnumbered by Plaintiffs from ¶ 7 on pg. 3 and thereafter. The misnumbered paragraphs were renumbered in a sequential fashion. Any references to the Complaint in this Recommendation refer to the corrected numerals.

In another hearing, an Indiana judge had ruled that Plaintiffs' assets were only "Alter Ego" assets of Donald Parrillo. *Id.* at ¶ 12. As a result, Reilly's attorneys collected upon the domesticated judgment by seizing Plaintiffs' assets. *Id.* Plaintiffs allegedly suffered a combined loss of over $2,000,000.00 worth of personal assets and continuing income from businesses they owned. *Id.*

However, the Indiana rulings were later vacated. *Id.* at ¶ 10. On April 18, 2006, the Illinois Circuit Court issued an order which rendered the Indiana order null and void because it apparently violated the Full Faith and Credit Clause of the United States Constitution. (Doc. 4). Illinois' 2006 order also permanently enjoined Reilly from taking any further legal actions against Donald Parrillo to enforce the Indiana order. *Id.* However, Plaintiffs claim the damage had already been done by the time the Indiana order was vacated.

Plaintiffs filed the current claim before this Court on March 5, 2010. (Doc. 1, Complaint). Their Complaint sets forth three alleged federal causes of action, and Plaintiffs seek damages for all three counts. *Id.* at ¶¶ 14-16. Count I states that Defendants are guilty of violating Plaintiffs' constitutional due process and civil rights under the Fifth and Fourteenth Amendments to the United States Constitution, and seek damages via 42 U.S.C. § 1983 of the Civil Rights Statute. *Id.* at ¶ 14. Plaintiffs argue that Defendants acted under the color of Indiana state law to deprive them of their rights when they unilaterally altered payment terms of the Illinois order rendered against Donald Parrillo. *Id.* For Count I, Plaintiffs seek $2,000,000.00 in damages. *Id.*

Count II alleges that Defendants violated Plaintiffs' Fifth and Fourteenth Amendment rights to not be deprived of life, liberty and the pursuit of happiness without due process of law. *Id.* at § 15. Plaintiffs argue that Defendants' action caused Plaintiffs to lose years of physical and mental well-being, productivity, and financial prosperity due to illegal collection of their assets. *Id.* For Count II, Plaintiffs seek $1,000,000.00 in damages.

Count III avers that the Indiana court violated the Full Faith and Credit Act by issuing an altered order which allowed Defendant's attorneys to "steal the assets" of Plaintiffs by

1 claiming they were "'Alter Ego' assets of their father." *Id.* at ¶ 16. Plaintiffs argue that this violation deprived them of their Fifth and Fourteenth Amendment due process rights and civil rights, causing them to suffer extensive damages. *Id.* For Count III, Plaintiffs seek $1,000,000.00 in damages. *Id.* Plaintiffs' total demand amounts to $4,000,000.00. *Id.* at ¶¶ 14-16; Doc. 8 (Notice of Lodging Proposed Form of Judgment (Order of Judgment, ¶ 4)).

Pending before the Court is Plaintiffs' Application for Entry of Default Judgment. (Doc. 7). Preparatory to this Application, Plaintiffs requested that the Clerk enter default against Defendant Reilly. (Doc. 7, pg. 1, lns. 21-22). Plaintiffs argued that despite proper service of process, Defendant did not comply with Rule 12(a) of the Federal Rules of Civil Procedure since Reilly failed to answer Plaintiffs' Complaint or otherwise plead within the statutory time period. (Doc. 5, Doc. 6, Doc. 7, pg. 1, lns. 14-16).

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, default was entered as to the Defendant on April 30, 2010. (Doc. 9). The District Court then referred Plaintiffs' Application for Entry of Default Judgment to the undersigned for a hearing and subsequent Report and Recommendation. (Doc. 10).

On June 11, 2010, the Court conducted a hearing on Plaintiff's Application for Entry of Default Judgment. (Doc. 12). Plaintiff Schob was the only party in attendance. The Court informed Schob that she could not appear on Plaintiff Thomas Parrillo's behalf because she is not an attorney. At the conclusion of the hearing, the Court informed Schob that it would advise Judge Bolton to deny Plaintiffs' Application and not enter a Default Judgment in this matter. *Id.* The Court stated its belief that the Complaint contains no federal cause of action, and that therefore the Court lacks subject matter jurisdiction to proceed on these issues. *Id.* The Court further advised Schob that she can file an objection to its recommendation, after which Judge Bolton will make a final ruling. *Id.*

## DEFAULT JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, a defendant must serve an answer within 21 days of being properly served with a summons and complaint. Fed. R. Civ. P.

12(a)(1)(A)(I) (West 2010). If a defendant fails to do so, a default judgment may be entered pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a) (West 2010).

However, even if entry of default has been made by the court clerk, granting a default judgment is not automatic. *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999); *see GMAC Commercial Mortg. Corp. v. Maitland Hotel Assoc.*, 218 F.Supp.2d 1355, 1359 (M.D. Fla. 2002) (finding that "mere entry of default by clerk does not in itself warrant entry of default judgment"). Instead, "[t]he [Court's] decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see Duling v. Markun*, 231 F.2d 833, 836 (7th Cir. 1956). Using this discretion, the Court must find a "sufficient basis in the pleadings" for a default judgment to be entered. *GMAC*, 218 F.Supp.2d at 1359 (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

When choosing to grant or deny entry of a default judgment, the Court considers several factors:

(1) the possibility of prejudice to the plaintiff;

(2) the substantive merits of the plaintiff's claim;

(3) the sufficiency of the complaint;

(4) the amount of money at stake;

(5) the possibility of prejudice to plaintiff if relief is denied;

(6) whether default was the result of excusable neglect; and

(7) the strong policy of the Federal Rules that favors decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the *Eitel* factors, the Court takes all factual allegations in Plaintiffs' Complaint as true, except for those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

1 | Although default judgments are more often granted than denied under this discretionary standard, default judgment is not appropriate when the complaint fails to state a claim. *GMAC*, 218 F.Supp.2d at 1359 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370, n. 41 (11th Cir. 1997)). This is because entry of a default judgment effectively renders the plaintiff's well-pleaded allegations as non-disputed facts. *GMAC*, 218 F.Supp.2d at 1359. It also bars the defendant from contesting those facts on appeal. *Id.* (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)).

## DISCUSSION

### I. Plaintiffs have complied with FRCP 55(a) and FRCP 54(c).

Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(a). Plaintiffs (1) submitted an application for entry of default on April 23, 2010 (Doc. 7), which (2) prompted the Clerk of the Court to enter default against Defendants on April 30, 2010 (Doc. 9). Plaintiffs' request for relief neither differs from nor exceeds that prayed for in the Complaint, and is thus in compliance with Fed. R. Civ. P. 54(c). Accordingly, the Court need only analyze the *Eitel* factors to determine whether default judgment is appropriate here.

### II. *Eitel* Factors Support Denial of Default Judgment Against Defendant due to complaint's Lack of Federal Cause of Action and Showing of Federal Subject Matter Jurisdiction.

#### 1. Possibility of Prejudice to Plaintiffs

With respect to the first *Eitel* factor, Plaintiffs would not suffer prejudice if the Court does not enter default judgment because Plaintiffs would have other recourse for recovery - namely, in state court and ultimately the United States Supreme Court. Both the Plaintiffs and Defendant Reilly reside in Arizona, so the U.S. District Court does not have complete diversity jurisdiction pursuant to 28 U.S.C. § 1332 to adjudicate the claims under state law. However, the Plaintiffs could file a suit in Indiana, and upon receipt of an adverse judgment, could appeal directly to the United States Supreme Court. Though the parties may be inconvenienced by the

distance of these venues, this burden does not outweigh the need to follow proper jurisdictional procedure.

### 2. Substantive Merits of Plaintiffs' Claim and Sufficiency of Complaint

As to the second and third *Eitel* factors, Plaintiffs fail to substantiate that this Court has federal subject matter jurisdiction to enter judgment for Plaintiffs' claims. Although Plaintiffs argue that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, the Court disagrees. The Plaintiffs are essentially seeking collateral damages from an adverse state court judgment that has already been vacated. Because the Indiana judgment was rendered null and void, no state action exists to substantiate a § 1983 claim against the State of Indiana or its judiciary in federal court.

Also, the Plaintiffs cannot sue the named Defendants here in their individual capacities under § 1983 or the Bill of Rights — they are private actors whose conduct did not constitute state action under 42 U.S.C. § 1983. Therefore, regardless of whether this void judgment deprived Plaintiffs of their constitutional due process rights and civil rights, the United States District Court cannot redress their injuries.

Plaintiffs additionally argue that Title 11 bankruptcy jurisdiction is present pursuant to 28 U.S.C. § 1334. However, the Complaint makes no reference to any Title 11 bankruptcy proceedings that would trigger § 1334 jurisdiction. Thus, the Court may not entertain this motion for default judgment because it does not have jurisdiction over the claims alleged in the pleadings.

### A. 42 U.S.C. § 1983 Claim: Elements

In the Ninth Circuit, "'[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'"[2] In other words, the

---

[2] *Jones v. Cmty. Redevelopment Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) (citing *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977)); *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) (private landowners who sought court approval before taking actions regarding real property did not act under color of state law simply by resorting to the

Complaint must do more than merely assert that defendants violated one's constitutional and civil rights. Because a 42 U.S.C. § 1983 claim falls within the Civil Rights Act, a plaintiff bringing such a claim must adhere to this pleading standard.

Statutory provision 42 U.S.C. § 1983, commonly referred to as "Section 1983", provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C.. § 1983 (West 2010).

This federal cause of action can be broken down into five elements, all of which must be met to succeed on a § 1983 claim:

**(i)  "Every person . . . . "**

Only "persons" under the statute are subject to liability. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989). For example, state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *see Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1125 (9th Cir. 2007). Private actors may also be sued in their individual capacities if their conduct amounts to action under the color of state law.

**(ii)  "[W]ho under color of [state law] . . . . "**

To prove whether someone has acted under the color of state law, one must show that the defendant has exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *U.S. v. Classic*, 313 U.S. 299, 326 (1941)); *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). While § 1983 generally applies to government officials or

---

dismissing § 1983 claim because plaintiff failed to make anything more than a conclusionary allegation that Hawaii Court and insurance company conspired against him to dismiss his complaint).

employees, a private actor may also act under the color of state law in some cases. *Wyatt v. Cole*, 504 U.S. 158, 162 (1992). However, this only occurs when private defendants' actions are "fairly attributable to the State." *Lugar*, 457 U.S. at 937.

The "fair attribution" requirement is satisfied if two conditions are met:

(1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and
(2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor."

*Id.* A person may be rendered a "state actor" because he or she is "a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* Essentially the "color of state law" requirement mirrors the "state action" prerequisite to constitutional liability. *Id.* at 929.

Although the conduct of private actors sometimes meets the *Lugar* test, the Ninth Circuit has held that private defendants representing or affiliated with opposing party in a court proceeding are not usually found to be acting under the color of state law.[3]

### (iii) "[S]ubjects or causes to be subjected . . . ."

One must also show that there is a causal connection between the defendant's actions and the harm that results. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691-692 (1978). To show legal causation, the plaintiff must prove that *but for* the defendant's action, the alleged injury would have never happened.

### (iv) "[Any person to] the deprivation of rights . . . ."

---

[3]*Simmons v. Sacramento Co. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (private attorney representing opposing party was not acting under color of state law, despite plaintiff's claims that the attorney conspired with state officers to deny plaintiff due process); *see Phillips v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 556 F.2d 939, 940 (9th Cir. 1977) (union officials who brought allegedly meritless suits against members did not act under color of state law simply by resorting to court system); *see Dema v. Snell & Wilmer, L.L.P.*, 2007 WL 4287813 (D. Ariz. 2007) ("[p]rivate actors associated with a winning party in a court proceeding usually have not acted under color of state law").

Section 1983 does not furnish any independent substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Instead, it provides remedial means of vindicating rights conferred elsewhere in the United States Constitution and federal laws. *Id.* Thus, a plaintiff may only prevail if he proves a deprivation of rights secured by the United States Constitution or federal statutes.

### (v) "[S]hall be liable . . . in an action at law, suit in equity, or other proper proceeding for redress . . . . "

If the Plaintiffs prove the first four elements of his § 1983 claim, they may pursue remedies on the theory of defendants' liability.

## B. Application of § 1983 Elements to Plaintiffs' Case

Here, defendants are "persons" within the meaning of § 1983. Even though they are private actors, they could still be rendered state actors if their conduct is "fairly attributable" to the state. However, Plaintiffs fail to meet the two-part "fair attribution" *Lugar* test for determining state action. As to the first prong, Defendant Reilly and her unnamed private attorneys did exercise their right to domesticate a judgment for a civil claim in the Indiana state court. Also, the right to domesticate this claim was created and governed by Indiana's civil procedure laws. As a result of the domestication and following orders, Plaintiffs were allegedly deprived of their constitutional and civil rights. Further, it is contended that the Indiana judgment violated the Full Faith and Credit Clause of the United States Constitution by failing to honor the original Illinois judgment. Thus, the first prong of the *Lugar* test may be satisfied.

However, the parties charged with the deprivation here cannot fairly be said to be state actors, so Plaintiffs' claim fails the second prong of the *Lugar* test. First, none of the Defendants – Reilly, the unidentified "Jane and John Does," and "Black and White Corporations" – are known to be state officials. None are government employees, nor contracted independently by the government. Furthermore, Plaintiffs pleaded no more than conclusory allegations that Defendants have acted together with or have obtained significant aid from state officials. Finally, Defendants' conduct – domesticating a civil claim and representing

- 10 -

Reilly in further case proceedings – is not "otherwise chargeable to the State." Instead, the circumstances of this case are more like those seen in *Simmons* or *Dema* (see Footnote 2 above). In both of those cases, the court found that plaintiffs failed to show that the private defendants were acting under the color of state law by bringing a civil claim in state court or merely representing an adverse party.

In *Simmons*, the complaint alleged that a private attorney was a state actor since this attorney had a default judgment entered against the plaintiff in a prior personal injury suit. *Simmons*, 318 F.3d at 1158-1161. The plaintiff argued that this attorney had conspired with state officers to deprive him of due process, and was thus subject to liability under 42 U.S.C. § 1983. *Id.* The Ninth Circuit found that plaintiffs' allegations were bare conclusions of constitutional deprivation, not well-pleaded assertions of fact. *Id.* at 1161. The Complaint was therefore insufficient to establish that the defendant attorney acted under the color of state law. *Id.*

Here, Defendants are also private actors who brought a civil judgment to a state court for further proceedings and collection. Beyond Plaintiffs' assorted statements that Defendants conspired with Indiana state officials and lied to state entities to invoke changes in the Illinois judgment, there is no firm showing of state action. Thus, Plaintiffs' Complaint fails to meet the second part of the *Lugar* test, therefore establishing that defendants did not act under the color of state law.

In addition, Plaintiffs fall short of demonstrating the legal causation needed to invoke § 1983. The Plaintiffs' Complaint does not contain one well-pleaded fact or piece of evidence directly linking the alleged conspiracy and deprivation of Plaintiffs' Fourteenth Amendment due process rights to Nancy Reilly or the unnamed defendants. Instead, the Complaint merely contains conclusory allegations that Defendants' conduct caused deprivation of such rights while acting under the color of state law. For example, Plaintiffs state that their damages are "a direct result of the efforts of Nancy L. Reilly to gain assets illegally and wrongfully with false testimony and legal influence through hiring a staff of attorneys who were without ethics

or concern as to the constitutional rights and the truth about the Plaintiffs." (Doc. 1, Complaint, pg. 5, ¶ 13, lns. 13-16). Yet the Complaint contains no identifiable acts of conspiracy or perjury by Defendants which would cause such deprivations.

Furthermore, the Plaintiffs assert that all damages were incurred because of the faulty state court judgment - a judgment which no longer exists and to which Plaintiffs were never parties with appropriate standing. Even if the Plaintiffs did have such standing and actually suffered damages, the actors who issued the altered judgment orders were not the private defendants, but the Indiana state court, its employees, and the Indiana state judge. Section 1983 suits against these actors are barred, however, due to Eleventh Amendment immunity granted to "arms of the State."

Here, Plaintiffs unsuccessfully attempt to transfer causation from immune state actors to adverse private actors. The Court rejects this transfer, and consequently finds a lack of legal causation as to the Defendants listed in the present action. Assuming there has been a deprivation of substantive due process and civil rights in this case, no state action has been sufficiently pleaded. Thus, Plaintiffs' allegations are insufficient to establish a meritorious § 1983 claim. The lack of substantive merits and insufficiency of the Complaint suggest that an entry of default judgment for the Plaintiffs would be inappropriate here.

**3. Remaining *Eitel* Factors**

The absence of a conceivable claim which could provide the basis for a default judgment trumps the other *Eitel* factors. Thus, further discussion of the remaining factors is not necessary.

**CONCLUSION**

Using its authorized discretion, the Court finds that Plaintiffs have satisfied the procedural requirements for obtaining default judgment. However, after considering the *Eitel* factors, the Court also finds that the allegations of the Complaint do not sufficiently establish any federal cause of action that would provide the necessary federal subject matter jurisdiction. Thus,

- 12 -

default judgment is not appropriate here, and the Court will recommend denial of Plaintiffs' Application for Entry of Default Judgment.

The Court would also encourage Plaintiffs to review the Seventh Circuit's opinions in *Parrillo v. Reilly*, 59 Fed.Appx. 129 (7th Cir. 2003) and *Schob v. Reilly*, 298 Fed.Appx. 500 (7th Cir. 2008). In these opinions, the Seventh Circuit rejected Plaintiffs' and Donald Parrillo's prior claims in Federal District Court and cautioned Plaintiffs against using § 1983 as a masking mechanism for underlying frivolous appeals to the domesticated Indiana judgment and related bankruptcy court proceedings.

**IT IS THEREFORE RECOMMENDED THAT THE COURT DENY WITH PREJUDICE** Plaintiffs' Application for Entry of Default Judgment (Doc. 7).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 23rd day of July, 2010.

_____
David K. Duncan
United States Magistrate Judge